UNITED STATES DISTRICT COURT                    **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
BUDIONO WICAKSONO, JONG HUI KWEK,  : 10 Civ. 3635 (LAK) (JCF)
RUDY HARIANTO, HANDOKO GWIE, on    :
behalf of themselves,              :
                                   :
                  Plaintiffs,      :        REPORT AND
                                   :        RECOMMENDATION
      - against -                  :
                                   :
XYZ 48 CORP., d/b/a Aoki Sushi,    :
                                   :
                  Defendant.       :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.:

        The plaintiffs, four former servers at Aoki Sushi, a
restaurant in New York City, bring this action pursuant to the Fair
Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq., and New
York Labor Law ("NYLL"), seeking unpaid hourly, overtime, and
spread-of-hours compensation, reimbursement for improperly withheld
tips, liquidated damages, prejudgment interest, and attorneys' fees
and costs.  The plaintiffs have moved pursuant to Rule 55(b)(2) of
the Federal Rules of Civil Procedure for a judgment by default
because the defendant has not appeared in this action or answered
the pleadings.  For the reasons that follow, I recommend that a
default judgment be entered and the plaintiffs be awarded a total
of $420,647 in damages, as apportioned below, and $19,425 in
attorneys' fees and costs.

Background

        The plaintiffs were employed by defendant Aoki Sushi as
servers between 2007 and 2010.  (Affidavit of Handoko Gwie dated
Sept. 1, 2010 ("Gwie Aff."), ¶ 1; Affidavit of Rudy Harianto dated

Sept. 1, 2010 ("Harianto Aff."), ¶ 1; Affidavit of Jong Hui Kwek dated Sept. 1, 2010 ("Kwek Aff."), ¶ 1; Affidavit of Budiono Wicaksono dated Sept. 1, 2010 ("Wicaksono Aff.), ¶ 1).  During the time they were employed by the defendant, the plaintiffs each worked from five to five and one-half days per week, for which they were paid $80-85 per week by the defendant.  (Gwie Aff., ¶¶ 2, 5; Harianto Aff., ¶¶ 2, 3, 5; Kwek Aff., ¶¶ 2, 3, 5; Wicaksono Aff., ¶¶ 2, 3, 5).  The plaintiffs also earned tips from the customers they served, although they were each required to pay approximately $64 per week out of their tips to members of the kitchen staff and to another restaurant employee named Lisa.  (Gwie Aff., ¶¶ 5, 6, 9, 10; Harianto Aff., ¶¶ 5, 6, 9, 10; Kwek Aff., ¶¶ 5, 6, 9, 10; Wicaksono Aff., ¶¶ 5, 6, 9, 10).  On weekdays, the plaintiffs typically worked from 11:00 a.m. until 11:30 p.m., with a two-hour break in the afternoon; on weekends, they typically worked from 11:00 a.m. until 11:00 p.m., with a one-hour break in the afternoon; and on half days, they typically worked from 11:00 a.m. until 3:00 p.m. or from 4:00 p.m. until 11:00 p.m.  (Gwie Aff., ¶¶ 3, 4; Harianto Aff., ¶¶ 3, 4; Kwek Aff., ¶¶ 3, 4; Wicaksono Aff., ¶¶ 3, 4).  By the beginning of May 2010, all four of the plaintiffs had stopped working for the defendant.  (Gwie Aff., ¶ 1; Harianto Aff., ¶ 1; Kwek Aff., ¶ 1; Wicaksono Aff., ¶ 1).

On May 4, 2010, the plaintiffs filed the complaint in this action, alleging that the defendant had "knowingly, intentionally and willfully" failed to provide minimum wage, overtime, or spread-of-hours pay to the plaintiffs, and had "illegally retained

portions of Plaintiffs' nightly tips and required Plaintiffs to
share their tips with managers and/or non-service employees."
(Complaint, ¶¶ 10-18).  However, the defendant did not appear or
respond.  Accordingly, the plaintiffs filed a motion for default
judgment on January 19, 2011.  An inquest was held on March 7,
2011, and on March 8, 2011, I issued an Order for the defendant to
show cause in writing by March 21, 2011 why judgment should not be
entered against it.  (Order to Show Cause dated March 8, 2011).  No
response has been received.

<u>Discussion</u>

     When a defendant has defaulted, a plaintiff's "well-pleaded
allegations concerning issues other than damages must be accepted
as true."  <u>RLI Insurance Co. v. King Sha Group</u>, 598 F. Supp. 2d
438, 441 (S.D.N.Y. 2009) (citing <u>Cotton v. Slone</u>, 4 F.3d 176, 181
(2d Cir. 1993)).

> Although a plaintiff seeking to recover damages against
> a defaulting defendant must prove its claim through the
> submission of evidence, the Court need not hold a hearing
> as long as it has (a) determined the proper rule for
> calculating damages on the claim and (b) concluded that
> the plaintiff's evidence establishes, with reasonable
> certainty, the basis for the damages specified in the
> default judgment.

<u>Id.</u> (internal citations omitted); <u>see also</u> <u>Ting Yao Lin v. Hayashi
Ya II, Inc.</u>, No. 08 Civ. 6071, 2009 WL 289653, at *2 (S.D.N.Y. Jan.
30, 2009) ("The Second Circuit has approved the holding of an
inquest by affidavit, without an in-person court hearing, 'as long
as [the Court has] ensured that there was a basis for the damages
specified in the default judgment.'" (alteration in original)
(quoting <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping</u>

Corp., 109 F.3d 105, 111 (2d Cir. 1997))), <u>report and recommendation adopted</u>, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009).

Under the FLSA, an employee seeking to recover unpaid wages "'has the burden of proving that he performed work for which he was not properly compensated.'" <u>Fujun Jiao v. Shi Ya Chen</u>, No. 03 Civ. 165, 2007 WL 4944767, at *2 (S.D.N.Y. March 30, 2007) (quoting <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687 (1946)). However, the employer bears his own burden under state and federal law of maintaining "records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." 29 U.S.C. § 211(c); <u>see also</u> N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 142-2.1. If the employer fails to meet this burden, the plaintiff may establish his entitlement to unpaid wages by introducing "'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference,'" <u>Fujun Jiao</u>, 2007 WL 4944767, at *2 (quoting <u>Anderson</u>, 328 U.S. at 687), which he may do "relying on his recollection alone," <u>Doonam Yang v. ACBL Corp.</u>, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005). The burden then shifts back to the employer to establish that the employee was in fact properly compensated. <u>Fujun Jiao</u>, 2007 WL 4944767, at *2-3. "If the employer fails to do so, the court may enter judgment in the employee's favor, using her recollection to determine damages, 'even though the result be only approximate.'" <u>Lanzetta v. Florio's Enterprises, Inc.</u>, __ F. Supp. 2d __, __, No. 08 Civ. 6181, 2011 WL 253961, at *1 (S.D.N.Y. Jan. 25, 2011) (quoting <u>Reich v. Southern New England Telecommunications</u>

Corp., 121 F.3d 58, 67 (2d Cir. 1997)).  Because the defendant has made no showing of its compliance with the law, the plaintiffs' estimates regarding their employment will be credited and their damages calculated on that basis.

The plaintiffs make claims pursuant to both state and federal wage laws.  Because the statute of limitations under NYLL is six years, all claims by all four of the plaintiffs are timely for the purposes of state law violations.   NYLL § 663(3); see also Lanzetta, 2011 WL 253961, at *4.   However, the statute of limitation under the FLSA is much shorter, extending only two years unless an employer's violations are found to be "willful," in which case it extends for three years.  29 U.S.C. § 255(a); see also Lanzetta, 2011 WL 253961, at *4.  Because the defendant defaulted and the complaint alleges that all of the violations were undertaken "knowingly, intentionally and willfully," the plaintiffs are entitled to a finding that the defendant's conduct was willful, and the three year statute of limitations will apply.  (Complaint, ¶¶ 10, 11, 17); see also Blue v. Finest Guard Services, Inc., No. 09 CV 133, 2010 WL 2927398, at *11 (E.D.N.Y. June 24, 2010) ("Since the [] defendant has failed to appear in court for this case, and a default judgment has entered against it, its failure to pay plaintiffs' minimum wages is deemed to be willful."), report and recommendation adopted, 2010 WL 2927403 (E.D.N.Y. July 19, 2010); Dong v. CCW Fashion Inc., Nos. 06 Civ. 4973, 07 Civ. 9741, 2009 WL 884680, at *4 (S.D.N.Y. Feb. 19, 2009) ("The defendants defaulted and therefore plaintiffs are entitled to [] a finding that the

defendants' conduct was willful."), report and recommendation adopted, 2009 WL 884668 (S.D.N.Y. April 1, 2009).   The only plaintiff affected by this is Mr. Kwek, who began working for the defendants on February 28, 2007, more than three years before the complaint in this action was filed; thus, for the period between February 28, 2007 and May 4, 2007, he will receive damages pursuant to state law only.   (Kwek Aff., ¶ 1).   All claims by all of the other plaintiffs are timely under both the FLSA's and NYLL's statutes of limitations.   (Gwie Aff., ¶ 1; Harianto Aff., ¶ 1; Wicaksono Aff., ¶ 1).

Additionally, although "plaintiffs are not entitled to recover twice for the same injury," Cao v. Wu Liang Ye Lexington Restaurant, Inc., No. 08 Civ. 3725, 2010 WL 4159391, at *2 n.2 (S.D.N.Y. Sept. 30, 2010), "[w]here a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages," Fujun Jiao, 2007 WL 4944767, at *17.   Thus, to the extent the plaintiffs' allegations allow recovery under both state and federal law, the law providing for the greatest recovery will govern the calculation of damages.

    A.   Wages

        1.   Minimum Wage

Both state and federal law mandate that employees be paid at least a minimum hourly rate for every hour that they work.   29 U.S.C. § 206(a); 12 NYCRR § 146-1.2.   During the period of the plaintiffs' employment, the minimum hourly wage in New York State

6

was $7.15, until it was increased to equal the federal minimum wage of $7.25 on July 24, 2009.  29 U.S.C. § 206(a)(1); NYLL § 652(1); see also 12 NYCRR § 146-1.2.  The federal minimum wage rate was $5.15 between February 28, 2007 and July 23, 2007; $5.85 between July 24, 2007 and July 23, 2008; $6.55 between July 24, 2008 and July 23, 2009; and $7.25 thereafter.  29 U.S.C. § 206(a)(1); see also Lanzetta, 2011 WL 253961, at *6 n.12.  The federal minimum wage does not preempt the state minimum wage, see 29 U.S.C. § 218(a), and a plaintiff may recover under whatever statute provides the highest measure of damages, Fujun Jiao, 2007 WL 4944767, at *17.  Therefore, the plaintiffs are entitled to recover whichever minimum wage -- state or federal -- was the highest at any given period of their employment.  See Cao, 2010 WL 4159391, at *2 n.2 ("New York State minimum wage levels exceeded federal levels at various times during the period of plaintiffs' employment . . . .  Accordingly, the higher of the FLSA or the Labor Law minimum wage level shall be used to calculate plaintiffs' damages for unpaid wages and overtime under the FLSA and the Labor Law.  Obviously, plaintiffs are not entitled to recover twice for the same injury; they will, however, be able to take advantage of the higher measure of damages."); Heng Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048, 2007 WL 313483, at *25 (S.D.N.Y. Feb. 1, 2007) ("Heng Chan I") ("Each plaintiff is entitled to compensatory damages totaling . . . the difference between the reduced hourly wage he or she was paid because of the tip credit allowance the defendants took and the statutorily-prescribed minimum wage, including at the

applicable New York minimum wage for all hours after . . . New York's rate was increased above the federal minimum wage." (citing 29 U.S.C. § 218(a))).[1]

In this case, there is no question that the defendant failed to pay the plaintiffs the minimum hourly wage; each plaintiff has stated that he worked between 53.5 and 57.5 hours per week, for which he was paid between $80 and $85 per week.  (Gwie Aff., ¶¶ 2-5; Harianto Aff., ¶¶ 2-5; Kwek Aff., ¶¶ 2-5; Wicaksono Aff., ¶¶ 2-5).  This amounts to, on average, an hourly wage of $1.50, far below the statutory minimum.

  2.   Tip Credit

Both state and federal law allow employers to subtract some portion of the tips their employees receive from the amount they

---

[1]  In some recent cases, courts in this district have applied the federal minimum wage rate, even when it is lower than the state rate, because the liquidated damages available under the FLSA rendered recovery under that statute more lucrative despite the lower wage rate.  See Lanzetta, 2011 WL 253961, at *6 ("The minimum wage in New York equaled or exceeded the federal level at all relevant times, but because the FLSA accords liquidated damages equal to 100 percent the wages due, it provides the higher measure of damages overall."); Alejo v. Darna Restaurant, No. 09 Civ. 5436, 2010 WL 5249383, at *5 n.6 (S.D.N.Y. Dec. 17, 2010) ("While the New York minimum wage was higher, plaintiffs are entitled to greater statutory liquidated damages under the FLSA than under New York law, so the Court employs the federal minimum wage rate." (internal citations omitted)), report and recommendation adopted in relevant part, 2011 WL 165413 (S.D.N.Y. Jan. 18, 2011); see also Fujun Jiao, 2007 WL 4944767, at *17 (awarding minimum wage damages under FLSA but not NYLL where minimum wage was the same under both but FLSA provided greater liquidated damages).  However, this conclusion depends on the assumption that FLSA liquidated damages are only available when actual damages for minimum wage and overtime violations are calculated according to the federal minimum wage rate.  As will be discussed further below, there is no such limitation on a plaintiff's ability to recover under the FLSA, and I will therefore calculate the plaintiffs' actual damages according to the highest minimum wage rate operational at any given time.

are owed under minimum wage laws -- to take a "tip credit" -- provided that the total amount received by the employee is equal to or in excess of the statutory minimum wage. 29 U.S.C. § 203(m); NYLL § 652(4); see also 12 NYCRR § 146-1.3.

Under the FLSA, a tip credit may only be taken when

(1) the employer has informed the tipped employee of statutory requirements related to the tip credit; and (2) "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."

Heng Chan I, 2007 WL 313483, at *17 (quoting 29 U.S.C. § 203(m)). These requirements are to be "strictly construed." Chu Chung v. New Silver Palace Restaurant, Inc., 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002). "[E]mployers are not merely barred from taking the tip credit if they share in the tip pool, but they are barred from taking the tip credit if any person who does not 'customarily and regularly receive tips' shares in the tip pool." Heng Chan v. Triple 8 Palace, Inc., No. 03 Civ. 6048, 2006 WL 851749, at *14 (S.D.N.Y. March 30, 2006).

In determining whether a participating employee is one who "customarily and regularly receives tips," courts in this Circuit and others focus on whether the employee in question is "part of an occupation that customarily and regularly receives tips," or whether they have more than "de minimis" interaction with customers as a part of their employment.

Garcia v. La Revise Associates LLC, No. 08 Civ. 9356, 2011 WL 135009, at *5 (S.D.N.Y. Jan. 13, 2011). Thus, employers have been barred from taking a tip credit where employees were required to

9

share their tips with a "general manager," Ayres v. 127 Restaurant Corp., 12 F. Supp. 2d 305, 308-09 (S.D.N.Y. 1998), or with "kitchen helpers," Lixin Zhao v. Benihana, Inc., No. 01 Civ. 1297, 2001 WL 845000, at *2 (S.D.N.Y. May 7, 2001); see also Reyes v. Altamarea Group, LLC, No. 10 Civ. 6451, 2011 WL 280799, at *2-3 (S.D.N.Y. Jan. 18, 2011) (finding FLSA violation adequately pled where plaintiffs were forced to share tips with "general manager," among other non-tipped employees); Chu Chung, 246 F. Supp. 2d at 230 (prohibiting tip credit where tip pool included individuals with "managerial authority and ownership interests").

In this case, the plaintiffs have established that they were forced to pay approximately $64 per week out of their tips to "kitchen staff" and to another employee named Lisa. (Gwie Aff., ¶¶ 6, 9, 10; Harianto Aff., ¶¶ 6, 9, 10; Kwek Aff., ¶¶ 6, 9, 10; Wicaksono Aff., ¶¶ 6, 9, 10). This practice was in violation of the FLSA's tip credit provisions. First, individuals who work in a restaurant's kitchen are not "customarily" tipped employees under the FLSA. See Lixin Zhao, 2001 WL 845000, at *2. Second, according to the plaintiffs, Lisa was a "manager" who hired the plaintiffs and exercised supervisory power at the restaurant. (Gwie Aff., ¶¶ 6-8; Harianto Aff., ¶¶ 6-8; Kwek Aff., ¶¶ 6-8; Wicaksono Aff., ¶¶ 6-8). Taking as true the plaintiffs' claim that Lisa was in fact a manager, RLI Insurance Co., 598 F. Supp. 2d at 441, forcing the plaintiffs to share their tips with her was also a violation of the FLSA, see Ayres, 12 F. Supp. 2d at 307-08 (finding employee became an "employer or his agent," and thus could

not share in tips, when he was promoted to position of general manager, made hiring and firing decisions, and supervised wait staff).

Furthermore, the FLSA requires that, in order to take advantage of the tip credit, employers must provide their employees with "proper notice of minimum wage laws." Heng Chan I, 2007 WL 313483, at *18. "Employers bear the burden of showing that they have satisfied this requirement"; if an employer cannot do so, "'no tip credit can be taken and the employer is liable for the full minimum-wage.'" Id. (quoting Reich v. Chez Robert, Inc., 28 F.3d 401, 403 (3d Cir. 1994)). In this case, the defendant has defaulted, and thus it has made no showing with respect to notice. Therefore, the plaintiffs are entitled to damages equal to the full minimum wage rate for every hour that they worked.

For the same reasons, the defendant is not entitled to a tip credit under NYLL. NYCRR, tit. 12, 146-1.3 ("An employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker . . . has been notified of the tip credit."); see also Lanzetta, 2011 WL 253961, at *5. Additionally, under NYLL, "[n]o employer . . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee." NYLL § 196-d. An exception exists under the law for "sharing of tips by a waiter with a busboy or similar employee," id., but this exception extends only to truly similar employees, such as a "host or greeter," and not to managers, Chu Chung, 246 F. Supp. 2d at 229-30 (internal quotation marks omitted). Because the

defendant compelled the plaintiffs to share their tips with employees who did not meet this definition, the "[p]laintiffs are [] entitled to the return of the unlawful deductions made from their tips during the limitations period," and accordingly will be credited with those lost tips in the calculation of their damages. Cao, 2010 WL 4159391, at *4; see also Ting Yao Lin, 2009 WL 289653, at *5.

### 3.   Overtime Compensation

Both federal and state law require that employers pay employees one and one-half times the ordinary minimum wage rate for any hours over forty that they work per week.   29 U.S.C. § 207(a); 12 NYCRR § 146-1.4; see also Kolesnikow v. Hudson Valley Hospital Center, 622 F. Supp. 2d 98, 118 (S.D.N.Y. 2009); Fujun Jiao, 2007 WL 4944767, at *11; Heng Chan I, 2007 WL 313483, at *23.   The plaintiffs have demonstrated that they worked well in excess of forty hours during each week that they were employed by the defendant. (Gwie Aff., ¶¶ 3, 4; Harianto Aff., ¶¶ 3, 4; Kwek Aff., ¶¶ 3, 4; Wicaksono Aff., ¶¶ 3, 4).   Therefore, they are entitled to recover one and one-half times the minimum wage rate for any hours in excess of forty that they worked each week.

### 4.   Spread-of-Hours Compensation

Although the FLSA does not have a similar provision, New York employees are entitled by law to receive "one additional hour of pay at the basic minimum hourly rate" for any workday that lasts longer than ten hours, including "intervals off duty."   12 NYCRR § 146-1.6; see also Lanzetta, 2011 WL 253961, at *3; Heng Chan I,

2007 WL 313483, at *21.  "The additional hour of pay is not a payment for time worked or work performed and need not be included in the regular rate for the purpose of calculating overtime pay." 12 NYCRR § 146-1.6(c).  The plaintiffs have established that each full day that they worked -- generally four or five days per week -- lasted in excess of ten hours.  (Gwie Aff., ¶ 3; Harianto Aff., ¶ 3; Kwek Aff., ¶ 3; Wicaksono Aff., ¶ 3).  They are therefore entitled under New York law to a spread-of-hours premium for each full day worked.

>    B.    Liquidated Damages and Prejudgment Interest

The FLSA provides that

> [a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b).  "Although double damages are the norm, courts have the discretion not to award such damages if an employer shows that its violations were in good faith." Lanzetta, 2011 WL 253961, at *7 (internal quotation marks and citations omitted).  By reason of their default, the defendant has failed to make this showing, and the plaintiffs are entitled to recover twice the amount they are owed under minimum wage and overtime laws.

The plaintiffs have also requested liquidated damages under NYLL in the amount of twenty-five percent of any unpaid wages, citing Sections 198(1-a) and 663(1) of NYLL.  (Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment Pursuant to

Federal Rule of Civil Procedure 55(b)(2) ("Pl. Memo.") at 14-16.[2]
In order to recover this measure of liquidated damages under New
York law, an employer's conduct must be willful.  See Ting Yao Lin,
2009 WL 289653, at *7.  "The applicable test for willfulness in
this context appears to parallel that employed in determining
willfulness for limitations purposes under the FLSA." Ke v. Saigon
Grill, Inc., 595 F. Supp. 2d 240, 261 (S.D.N.Y. 2008).  As
discussed above, the defendant is in default, and therefore the
plaintiffs' allegation that its conduct was willful is credited.

Authority is mixed regarding whether a plaintiff may recover
liquidated damages under both federal and state law for minimum
wage and overtime violations.  Compare Cao, 2010 WL 4159391, at *5
("Because liquidated damages under the FLSA and the Labor Law serve
fundamentally     different     purposes,     a     plaintiff     may     recover

---

[2] On December 10, 2010, the New York legislature passed the
Wage Theft Prevention Act, which, among other changes, raised the
available amount of liquidated damages from twenty-five to one
hundred percent, "unless the employer proves a good faith basis to
believe that its underpayment of wages was in compliance with the
law."  2010 N.Y. Sess. Laws ch. 564; NYLL §§ 198(1-a), 663(1).
However, "'retroactive operation is not favored by [New York]
courts and statutes will not be given such construction unless the
language expressly or by necessary implication requires it.'"  CFCU
Community Credit Union v. Hayward, 552 F.3d 253, 262 (2d Cir. 2009)
(alteration in original) (quoting Majewski v. Broadalbin-Perth
Central School District, 91 N.Y.2d 577, 584, 673 N.Y.S.2d 966, 968
(1998)); see also Landgraf v. USI Film Products, 511 U.S. 244, 280-
86 (1994) (finding presumption against retroactivity is in effect
when new statute would "increase a party's liability for past
conduct" and applying this rule to statute authorizing compensatory
and punitive damages for conduct already prohibited under Title
VII).  There is no indication in the Act itself, nor in the
Sponsor's Memorandum or any previous drafts of the Act, that it was
intended to have retroactive effect.  See 2010 N.Y. Sess. Laws ch.
564; N.Y. Spons. Memo. 2010 S.B. 8380; 2009 N.Y. S.B. 8380 (June
27, 2010).  Therefore, NYLL's liquidated damages provisions will be
applied as they existed at the time of the defendant's violations.

liquidated damages under both the FLSA and the Labor Law."), Dong, 2009 WL 884680, at *4 ("In addition to actual damages, plaintiffs may recover liquidated damages under the FLSA and New York State law for the same minimum wage and overtime violations."), and Ke, 595 F. Supp. 2d at 261 ("Since the two awards serve different purposes, plaintiffs may recover both."), with Lanzetta, 2011 WL 253961, at *7 (awarding liquidated damages under New York law only with respect to state law claims and not to minimum wage and overtime violations), Ting Yao Lin, 2009 WL 289653, at *7 (same), and Heng Chan I, 2007 WL 313483, at *29 (same); see also Day An Zhang v. L.G. Apparel Inc., No. 09 CV 3240, 2011 WL 900183, at *5 (E.D.N.Y. Feb. 18, 2011) (noting "the law on this issue is unsettled"), report and recommendation adopted, 2011 WL 900950 (E.D.N.Y. March 15, 2011).

The plaintiffs have requested liquidated damages for the defendant's minimum wage and overtime violations under both the FLSA and NYLL -- in effect, a liquidated damages rate of 125%. (Pl. Memo. at 15-16). While I agree that the plaintiffs may recover liquidated damages under both provisions because they have established that the defendant violated both federal and state law in failing to pay them minimum wage and overtime, the most rational way to reconcile these competing cases is to calculate liquidated damages pursuant to the FLSA using the amount of actual damages that would have been awarded had the federal minimum wage rate applied.  This approach recognizes that the two liquidated damages provisions "serve fundamentally different purposes," Cao, 2010 WL

4159391, at *5, but also avoids the implication -- unsupported by the statute or by case law -- that 29 U.S.C. § 218 makes it a violation of <u>federal</u> law to fail to pay the <u>state</u> minimum wage rate. <u>See</u> 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter . . . ."); <u>see also</u> <u>Fast v. Applebee's International, Inc.</u>, No. 06-4146-CV-C, 2009 WL 2391775, at *7 (W.D. Mo. Aug. 3, 2009) (finding unpersuasive "the Plaintiffs' argument that 29 U.S.C. § 218(a) mandates defining 'minimum wage' for purposes of FLSA damages calculations as the higher of the state and federal minimum wage rates" but distinguishing that case from cases that "included claims for violations of state wage statutes"). The plaintiffs are also entitled to liquidated damages under NYLL for the defendant's other New York law violations: failure to pay the spread-of-hours premium and unlawful retention of their tips.[3]

The plaintiffs further seek prejudgment interest on any claims under NYLL, including the minimum wage and overtime claims for which they are entitled to recover under both NYLL and the FLSA. (Pl. Memo. at 16-17). Prejudgment interest may be applied to

---

[3] Although some cases treat an award compensating for the illegal retention of a plaintiff's tips as recovery under the FLSA, <u>see, e.g.</u>, <u>Heng Chan I</u>, 2007 WL 313483, at *29, that statute prohibits retaining tips only to the extent that the employer then claims a tip credit and pays less than the minimum wage, 29 U.S.C. § 203(m). Only New York law explicitly prohibits the retention of an employee's tips by individuals other than "similar" employees. NYLL § 196-d; <u>see also</u> <u>Ting Yao Lin</u>, 2009 WL 289653, at *5.

violations of NYLL for which liquidated damages have already been
provided. See Ting Yao Lin, 2009 WL 289653, at *7 ("The Second
Circuit has held that even where a plaintiff is awarded liquidated
damages under New York Labor Law, prejudgment interest still is
appropriate." (citing Reilly v. Natwest Markets Group Inc., 181
F.3d 253, 265 (2d Cir. 1999))).   However, "'[i]t is well settled
that in an action for violations of the Fair Labor Standards Act
prejudgment interest may not be awarded in addition to liquidated
damages,' because '[a]mong other purposes, liquidated damages
compensate for the delay in receiving wages that should have been
paid.'"  Heng Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048, 2007
WL 1373118, at *9 (S.D.N.Y. May 8, 2007) ("Heng Chan II") (second
alteration in original) (quoting Brock v. Superior Care, Inc., 840
F.2d 1054, 1064 (2d Cir. 1988)).   Indeed, it is the same case law
distinguishing liquidated damages from prejudgment interest under
NYLL that has justified a determination by courts that plaintiffs
may recover both FLSA liquidated damages and NYLL liquidated
damages for the same minimum wage and overtime violations. See Ke,
595 F. Supp. 2d at 261-62 (noting that FLSA liquidated damages
"serve as a form of pre-judgment interest" while "the liquidated
damages provided for in the New York Labor Law are punitive in
nature" and concluding that Second Circuit case allowing liquidated
damages and prejudgment interest under New York law should "[b]y
the same reasoning" support simultaneous award of liquidated
damages under federal and state law); see also Cao, 2010 WL
4159391, at *5 (citing Ke to allow recovery under state and federal

liquidated damages provisions because one is "compensatory" and other is "punitive"). Further, in these cases courts generally did not award additional prejudgment interest for claims upon which plaintiffs had already recovered both measures of punitive damages. See Cao, 2010 WL 4159391, at *6; Ke, 595 F. Supp. 2d 261-62; cf. Kopec v. GMG Construction, No. 09 CV 2187, 2010 WL 3925210, at *4 (E.D.N.Y. Sept. 10, 2010) (finding that although plaintiffs may not recover prejudgment interest on FLSA liquidated damages, they "may recover NYLL prejudgment interest on unpaid wages that were awarded under both the FLSA and NYLL, even where FLSA liquidated damages have also been awarded based on that amount" (citing Heng Chan II, 2007 WL 1373118, at *9)), report and recommendation adopted, 2010 WL 3909273 (E.D.N.Y. Sept. 30, 2010); see also Dong, 2009 WL 884680, at *5 ("Prejudgment interest is recoverable on the actual damages.  On the claims for liquidated damages, prejudgment interest is recoverable under New York Labor Law, but not under the FLSA.").  Therefore, prejudgment interest will not be added to the plaintiffs' minimum wage and overtime claims.

However, the plaintiffs are entitled to prejudgment interest on their exclusively state law claims.  Prejudgment interest is governed by Sections 5001 and 5004 of New York Civil Practice Law and Rules, which provide for a rate of nine percent, calculated "[w]here such damages were incurred at various times, . . . from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  N.Y. CPLR §§ 5001(b), 5004; see also Ting Yao Lin, 2009 WL 289653, at *7.  The plaintiffs have

18

calculated prejudgment interest from the midway point of each plaintiff's employment, which is a reasonable approach. (Pl. Memo. at 18 n.19); see also Ting Lao Lin, 2009 WL 289653, at *7 (finding use of midpoint an "acceptable" methodology).

C.   Damages Calculations

Pursuant to the discussion above and the affidavits submitted by each of the plaintiffs, damages calculations are as follows.

1.   Handoko Gwie

According to Mr. Gwie's affidavit, he was employed by the defendant from October 11, 2007 until approximately May 1, 2010, with one week of vacation in 2008, a total of 133 weeks. (Gwie Aff., ¶ 1).[4] During that period, he worked four full weekdays, one full weekend day, and one half day each week, a total of fifty-seven hours, for which he was paid $85. (Gwie Aff., ¶¶ 2-5).[5] In order to calculate his damages, I subtracted $85 from the total minimum wage he was owed for each forty hour work week; I then

---

[4] The plaintiffs' calculation of Mr. Gwie's time worked is slightly different, primarily because they credited him with several weeks of work in May 2010. (Summary of Damages Calculations for Handoko Gwie ("Gwie Damages"), attached as Exh. G to Affirmation of D. Maimon Kirschenbaum dated Jan. 19, 2011 ("Kirschenbaum Aff.")). However, Mr. Gwie has not identified the specific number of weeks worked in May 2010, and I will therefore assume he stopped working on May 1, 2010; when calculating the number of weeks that he worked, I rounded up to account in part for any work days lost through this assumption. I have done the same for Mr. Kwek and Mr. Wicaksono.

[5] The plaintiffs' calculation of Mr. Gwie's damages states that "during his entire tenure at Aoki Sushi, he alternated between a full and half shift on Sundays." (Gwie Damages at 1). However, this is not reflected in his affidavit, which claims that he did not work on Sundays. (Gwie Aff., ¶ 2). Therefore, I have calculated his damages in accordance with his affidavit, not the plaintiffs' damages calculation.

credited him with one and one-half times the minimum wage for seventeen hours of overtime work per week.  Mr. Gwie's affidavit establishes that five times per week he worked days longer than ten hours, so I also credited him with an additional five hours per week at the minimum wage rate under the spread-of-hours law.  (Gwie Aff., ¶ 3).  Finally, I credited Mr. Gwie with $64 in improperly withheld tips for each week that he worked.  (Gwie Aff., ¶ 10).  I awarded FLSA liquidated damages at an amount that reflects one hundred percent of the minimum wage and overtime he would have been awarded pursuant to the federal minimum wage, and NYLL damages at twenty-five percent of the actual damages for minimum wage, overtime, and spread-of-hours violations and for improperly withheld tips.  Finally, I calculated prejudgment interest on his spread-of-hours damages and improperly withheld tips at nine percent from January 19, 2009, the midpoint of his employment by the defendant.  Pursuant to those calculations, Mr. Gwie is owed $129,184.

| Handoko Gwie | | | | | | |
|---|---|---|---|---|---|---|
| Wage | No. of Weeks | Minimum Wage | Overtime | Spread of Hours | Withheld Tips | Total |
| $7.15 | 93 | $18,693 | $16,956 | $3,325 | $5,952 | $44,926 |
| $7.25 | 40 | $8,200 | $7,395 | $1,450 | $2,560 | $19,605 |
| | | | | | Total | $64,531 |

| FLSA Liquidated Damages | | NYLL Liquidated Damages | | Prejudgment Interest | Total |
|---|---|---|---|---|---|
| $45,801 | | $16,133 | | $2,719 | $64,653 |
| Grand Total = $129,184 | | | | | |

2.   <u>Jong Hui Kwek</u>

According to Mr. Kwek's affidavit, he was employed by the defendant from February 28, 2007 until approximately May 1, 2010, with two weeks of vacation over that period, for a total of 163 weeks of work.  (Kwek Aff., ¶ 1).[6]  During that time, he worked three full weekdays, two full weekend days, and one half day on approximately half the weeks, for a total of 57.5 hours, for which he was paid $85.  (Kwek Aff., ¶¶ 2-5).  During these weeks, he worked five days that were longer than ten hours per day.  (Kwek Aff., ¶ 3).  For the other half of the weeks, he worked three full weekdays, one full weekend day, and two half days (one of four hours and the other of seven hours), for a total of 53.5 hours, for which he was paid $80.  (Kwek Aff., ¶¶ 2-5).  During these weeks, he worked four days that were longer than ten hours per day.  (Kwek Aff., ¶ 3).  In order to calculate Mr. Kwek's damages, I therefore divided his time working for the defendant in half and calculated one half according to each schedule.  I then calculated liquidated damages as for Mr. Gwie, except that I excluded the nine weeks between February 28, 2007 and May 4, 2007 as untimely for the purpose of FLSA liquidated damages and calculated prejudgment interest on those nine weeks, his spread-of-hours damages, and improperly withheld tips at nine percent from September 29, 2008.

---

[6] I assigned the two weeks of vacation to the time worked before July 24, 2009 for the purpose of calculations under the New York minimum wage, and one week each to the period between July 24, 2007 and July 23, 2008 and the period between July 24, 2008 and July 23, 2009 for the purpose of calculating FLSA liquidated damages under the federal minimum wage.

Pursuant to these calculations, Mr. Kwek is owed $149,234.

| Jong Hui Kwek | | | | | | |
|---|---|---|---|---|---|---|
| Wage | No. of Weeks | Minimum Wage | Overtime | Spread of Hours | Withheld Tips | Total |
| $7.15 | 61.5 | $12,362 | $11,543 | $2,199 | $3,936 | $30,040 |
| $7.15 | 61.5 | $12,669 | $8,904 | $1,759 | $3,936 | $27,268 |
| $7.25 | 20 | $4,100 | $3,806 | $725 | $1,280 | $9,911 |
| $7.25 | 20 | $4,200 | $2,936 | $580 | $1,280 | $8,996 |
| | | | | | Total | $76,215 |

| FLSA Liquidated Damages | NYLL Liquidated Damages | Prejudgment Interest | Total |
|---|---|---|---|
| $49,546 | $19,054 | $4,419 | $73,019 |
| **Grand Total** = $149,234 | | | |

3. <u>Rudy Harianto</u>

According to Mr. Harianto's affidavit, he was employed by the defendant from May 28, 2007 until approximately May 31, 2009, for a total of 105 weeks. (Harianto Aff., ¶ 1). During that time, he worked for three full weekdays, two full weekend days, and one half day on approximately half the weeks, for a total of 57.5 hours, for which he was paid $85. (Harianto Aff., ¶¶ 2-5). During these weeks, he worked five days that were longer than ten hours per day. (Harianto Aff., ¶ 3). For the other half of the weeks, he worked three full weekdays, two weekend days and two half days (one of four hours and the other of seven hours), for a total of 53.5 hours, for which he was paid $80. (Harianto Aff., ¶¶ 2-5). During these weeks, he worked four days that were longer than ten hours

per day.  (Harianto Aff., ¶ 3).  In order to calculate Mr. Harianto's damages, I therefore divided his time working for the defendant in half and calculated one half according to each schedule.  I then calculated damages as for Mr. Gwie, awarding prejudgment interest on his exclusive state law claims at nine percent from May 29, 2008.  Pursuant to these calculations, Mr. Harianto is owed $95,633.

| Rudy Harianto | | | | | | |
|---|---|---|---|---|---|---|
| Wage | No. of Weeks | Minimum Wage | Overtime | Spread of Hours | Withheld Tips | Total |
| $7.15 | 52.5 | $10,553 | $9,854 | $1,877 | $3,360 | $25,644 |
| $7.15 | 52.5 | $10,815 | $7,601 | $1,502 | $3,360 | $23,278 |
| | | | | | Total | $48,922 |

| FLSA Liquidated Damages | | NYLL Liquidated Damages | | Prejudgment Interest | Total | |
|---|---|---|---|---|---|---|
| $31,828 | | $12,231 | | $2,652 | $46,711 | |
| Grand Total = $95,633 | | | | | | |

4.  <u>Budiono Wicaksono</u>

According to Mr. Wicaksono's affidavit, he was employed by the defendant from approximately June 1, 2009 until approximately May 1, 2010, for a total of 48 weeks.  (Wicaksono Aff., ¶ 1).  During that time, he worked the same schedule as Mr. Harianto, and his calculations therefore proceed accordingly, with prejudgment interest awarded on his exclusive state law claims at nine percent from November 1, 2009.  Pursuant to these calculations, Mr. Wicaksono is owed $46,596.

23

| Budiono Wicaksono | | | | | | |
|---|---|---|---|---|---|---|
| Wage | No. of Weeks | Minimum Wage | Overtime | Spread of Hours | Withheld Tips | Total |
| $7.15 | 4 | $804 | $751 | $143 | $256 | $1,954 |
| $7.15 | 4 | $824 | $579 | $114 | $256 | $1,773 |
| $7.25 | 20 | $4,100 | $3,806 | $725 | $1,280 | $9,911 |
| $7.25 | 20 | $4,200 | $2,936 | $580 | $1,280 | $8,996 |
| | | | | | Total | $22,634 |

| FLSA Liquidated Damages | | NYLL Liquidated Damages | Prejudgment Interest | Total |
|---|---|---|---|---|
| $17,697 | | $5,659 | $606 | $23,962 |
| Grand Total = $46,596 | | | | |

D.  Attorneys' Fees and Costs

The FLSA and NYLL both provide for an award of reasonable attorneys' fees to a successful plaintiff.  See 29 U.S.C. § 216(b); NYLL § 198(1-a).  "In awarding attorney's fees, the Court must consider whether the hourly rates requested and the time spent are reasonable, and whether the time entries are documented adequately."  Guo Xing Cao v. Chandara Corp., No. 00 Civ. 8057, 2001 WL 34366628, at *6 (S.D.N.Y. July 25, 2001).  "'[A]ll applications for attorney's fees [must] be supported by contemporaneous records.'"  Alejo, 2010 WL 5249383, at *6 (quoting Scott v. City of New York, 626 F.3d 130, 132 (2d Cir. 2010)).

The plaintiffs have requested attorneys' fees at a rate of

24

$350 per hour for a total of 54.4 hours spent working on the case. (Pl. Memo. at 20-21).   They have also requested $560 in costs related to their court filings.   (Pl. Memo. at 21).   The hourly rate is reasonable.   <u>See</u>, <u>e.g.</u>, <u>Dong</u>, 2009 WL 884680, at *6 (awarding attorneys' fees at a rate of $350 per hour); <u>Ting Yao Lin</u>, 2009 WL 513371, at *10 (finding rate of $400 per hour reasonable).   The costs and time spent are also reasonable (particularly because the plaintiffs are not requesting payment for any paralegal time devoted to the case (Pl. Memo. at 19 n.20)) and, for the most part, the time expended is adequately documented. (Time and Expense Records, attached as Exh. C to Kirschenbaum Aff.).   However, one half hour of attorney time is not adequately described (indeed, it is not described at all) in the contemporaneous billing records, and thus it will not be compensated.   (Time Records, attached as part of Exh. C to Kirschenbaum Aff.).   Therefore, the plaintiffs should be awarded $19,425 in attorneys' fees and costs.

<u>Conclusion</u>

For the reasons set forth above, I recommend that Handoko Gwie be awarded $129,184 in damages, that Jong Hui Kwek be awarded $149,234 in damages, that Rudy Harianto be awarded $95,633 in damages, and that Budiono Wicaksono be awarded $46,596 in damages. I further recommend that the plaintiffs be awarded $19,425 in attorneys' fees and costs.   Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file

written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Lewis A. Kaplan, Room 1310, and to the chambers of the undersigned, Room 1310, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.


Respectfully submitted,


JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          May 2, 2011

D. Maimon Kirschenbaum, Esq.
Charles E. Joseph, Esq.
Joseph, Herzfeld, Hester & Kirschenbaum LLP
757 Third Avenue
New York, New York 10017

XYZ 48 Corp. d/b/a
Aoki Sushi
234 West 48th Street
New York, New York 10036

26